Ladies and gentlemen, please rise. This court is now in session. Please be seated. Would the clerk call the next case, please? 321-0303, people of the state of Illinois, affiliated by Thomas Serrato v. Jesus Garcia, appellate by Jay Wigman. Thank you, Mr. Wigman. Good afternoon. Good afternoon. May it please the court, counsel, I am Jay Wigman, an assistant appellate defender with the Office of the State Appellate Defender, counsel for defendant appellant Jesus Garcia. Mr. Garcia was a professional truck driver who in the fall of 2017 had been driving a commercial truck for 14 years. He was on I-57 in Kankakee County. He was traveling at 60 miles per hour as he approached a construction zone where he should have been traveling 55 miles per hour by statute and by posted signage. At 60 miles per hour, the people are traveling at 88 feet per second. At 55 miles per hour, they're traveling slightly less at 81 feet per second. In a five-second period, which the state's expert testified was the amount of time that the car in front of Mr. Garcia had been parked, a truck will travel at 88 feet per second, approximately 436 feet. Within that period of time, the state's expert testified that had the defendant hit his brakes one second earlier, then he would have pulled up 93 feet short. It was a one-second difference that cost the lives of two people on that interstate that day. The defendant then was convicted by a jury, or I'm sorry, was found guilty by a jury and sentenced to an eight-year period in the Department of Corrections. On his behalf, I now stand here for Jesus Garcia with two arguments. The first is that the state failed to prove Jesus Garcia guilty beyond a reasonable doubt of reckless homicide because his conduct does not fit within any of the three categories established by this court in People v. Parlerburg nearly 30 years ago. And because the plain language of the governing statute, 720 ILCS 5-9-3, subsection E-8, makes clear that speeding less than 25 miles per hour over the speed limit in a construction zone, even when workers are present, does not constitute recklessness. The second argument raised in the briefs and before this court is that the circuit court erred by considering that the offense occurred in a construction zone and that two people died because those are two factors inherent in the offense as it was charged. The offense had been a Class III felony. It was elevated to a Class II felony because it occurred in a construction zone. And a minimum sentence, if one was imposed, was set at six years rather than the normal three. Further, the circuit court abused its discretion when it found that probation was not appropriate and perhaps was improperly influenced by an improper victim impact statement. Turning to the first argument, it is clear that excessive speed is not considered reckless behavior, and that's been the case for approximately 100 years since the invention of the car. The Supreme Court of Illinois in People v. Potter in 1955 stated that speeding is not criminal negligence. More recently, the 4th District Appellate Court in 2017, in a case that somewhat parallels this, People v. Shakarov, noted that in Barham in the 5th District in 2003 and Jackie Pack in the 2nd District in 1995, indicated that speeding even up to 20 miles per hour and certainly at 5 miles per hour is, while a technical violation at 5 miles per hour, not criminal negligence. And the trial court said that in this trial during the motion for directed verdict, which it denied, saying that it was a question of fact for the jury as to whether the conditions were such. And that's one of the three categories that Parleberg set forth. Two of them are readily not applicable to the instant case. The first category, where recklessness may be presumed, is where it involves a DUI, whether it's intoxication by alcohol or drugs. The second category is where there are two or more offenses. And clearly that wasn't here, given that there wasn't even one offense that constitutes reckless conduct. The third, and that's the most appropriate, and it's what was argued in the circuit court and what was argued in the briefs in this case, is whether or not there was a conscious disregard for the circumstances or the surroundings. Ordinarily, I think we tend to think of surroundings as being weather-related or if it's a curvy road. And even then, that often depends on the driver's knowledge of that road, as stated in, I believe it was Griffith, cited within the briefs. In the instant case, the circumstances that were considered were the fact that this is a construction zone. And the legislature clearly answered the question as to what constitutes reckless conduct, given that particular circumstance, by stating that only when you are dealing with speed of more than 20 miles per hour and workers are present in a construction zone. And it should be noted that that subsection applies both to construction zones and to school zones. Clearly, the animating concern of that subsection is when there are people around who may not have the ability to defend themselves if there are pedestrians, if there are children, if there are workers who are focusing on other tasks. That statute and the principal concern is people who are outside of cars within that area. This was not a concern in the instant case of stopped traffic because the signs, while there was testimony that there had been a sign stating that there were stoppages ahead, none of the exhibits that were entered into evidence stated that there was a stop ahead or a risk of that. And indeed, given that there was a clear five seconds and given the testimony of one witness that he had been parked for 30 seconds to a minute, this cannot have been a highly trafficked area if the defendant was the next car behind this car and this truck. So, Mr. Wigman, what significance, if any, do you place upon, if I think I'm correct, that the defendant testified that he did not remember seeing any of the signs? There are several aspects to that. The first is that he testified that he didn't remember seeing the sign. He also testified that he didn't remember braking and the evidence was clear that he had braked. He, at one point, said that there were no signs and he corrected himself without being asked and said there weren't that many. But the significance, I think the question becomes whether this is a reckless disregard. We all see the speed signs and we know what the speed is. The violation is inherent in seeing the sign, perhaps, and ignoring it. And it may also be something that, as he stated, he didn't recall. He testified that he didn't remember his speed, but he was able to recall the speed for the officers when he spoke with them. But the key question is it's somewhat irrelevant as to whether he knew that the sign was there, particularly since there was nothing to indicate to somebody unfamiliar with the road that we were looking at a stoppage of traffic. Locals were familiar with it and an officer who had been by earlier that day knew that that was a risk, although I don't believe that he testified that there was a stoppage, but said that people were going one, two, three miles per hour and very slowly. While there was a risk of that slowdown, I think the other thing that has to be considered is that the difference between 55 miles per hour and the difference between 60 miles per hour is about seven feet per second. Even if he had touched his brakes a tenth of a second faster, he would not have been able to stop in the time that he did. But didn't he also testify that the Toyota maneuvered very quickly in front of him and thereby that he didn't have time to make a stop when the scientific evidence, the expert evidence, if you will, seems to suggest otherwise? One of the principles of the trial, and I believe it was stated in Peeble v. Colson, is that what matters is the strength of the state's case and not the weakness of the defendant's case. And here we have a, there's no evidence as to, and that was the difficulty for the prosecutors at trial, was trying to figure out what exactly had happened. And I imagine that in one or two seconds, and at most this was five seconds, and the reaction time had to be very quick, and the fact that the defendant's recall was not exact or that things were a blur to him or that it happened very quickly doesn't affect the fact that the statute requires that reckless conduct be more than momentary inattention. And in Shakarov it was stated that there could have been a few seconds of inattention, and that doesn't demonstrate recklessness, even given the circumstances there where it was a sheet of ice and very difficult to track. Are you basing the five-second premise that you're making here on what was found in what I'll call the black box of the Toyota? Correct. Is that what you're basing it on? Yes, sir. Isn't it true that that only occurred in five-second intervals? In other words, once five seconds passed, we don't know what happened five seconds before. Correct, but we do know that in the last half-second that Toyota, well, I guess it would be in the first half-second that the Toyota came to a complete stop. It had been moving at .6 miles per hour before then, and what the brake lights were or what was seen from behind is hard to tell. And it's unclear to me, looking at the record, whether there was any blockage. The defendant and the car behind him testified that they couldn't see past the semi-trucks that were in front of them. So how much he could see, how much he saw, but the five seconds also goes to the framework that the expert set up, where he said if there had been a reaction, essentially, given the math, within 1.06 seconds of the Toyota coming to a stop, had he reacted that quickly, then he would have been able to avoid it. And so it seems that there just wasn't enough time for the defendant. And again, it would have been a difference of 35 feet had he been traveling at 55 miles per hour. But there has never been a case that has found that traveling at that speed, even in a construction zone and even where workers are present, that that constitutes reckless behavior. Thank you. I would also note that in Parleberg, one of the statements that was made by this court was that if the defendant's conduct does not fall into one of those three categories, then a finding by a jury or by a trial judge that the defendant was guilty of reckless behavior does not survive appellate review. And the concern here is that, in a way, if five miles per hour over the speed limit in otherwise reasonable conditions, and where the conditions are defined by the legislature in such a way as to require more than five miles per hour, if the holding here is that the defendant committed reckless behavior by failing to slow down to 55 miles per hour, then essentially what has been created is a strict liability statute. If there are no questions regarding that, I will turn to the second argument, which regards the sentence that was imposed by the trial court. And the first concern that we raise is that the statute prescribing this offense had already elevated this from a Class III felony to a Class II felony, and then set a minimum sentence of six years and a maximum of 28 years. And that was because of the circumstances of the offense, the first being that it occurred in a construction zone, and then the minimum sentence created, if one's imposed, because of the fact that there were two deaths. And I note the word if is important here because it clearly implies that the legislature believed that this is a statute that a violation did not disqualify somebody from being eligible for probation. And probation here is clearly proper because of the fact that this is not an intentional offense. It was not something that we would normally consider as a criminal enterprise. And in fact, the probation statute states that the circuit court is required to sentence a defendant to probation unless it finds, after due regard to the nature and circumstances of the offense and to the defendant's history, character, and condition, either that imprisonment is necessary to protect the public or that a sentence of probation would deprecate the seriousness of the offense and would be inconsistent with the ends of justice. And I would note that the circuit court specifically found that imprisonment was not necessary to protect the public, and so it's the remainder that's at issue here. And the question is whether a sentence of probation would deprecate the seriousness of the offense and be inconsistent with the ends of justice. The circuit court indicated that it was troubled by the fact that this would seem to give license to people to speed in a construction zone and kill two people and then not get anything more than probation. But the statute for probation, the instant statute regarding the sentence to be imposed under subsection E-8, clearly indicates that probation is available. I see that I've run out of time. I've been gone two years, and now we have lights, and so I apologize. But if there are any questions, I'm happy to answer them. I have a question. Yes. So with regard to the issue that probation is the preferred sentence, doesn't the statute require that as part of that analysis, that the trial court is required to consider the nature and circumstances of the offense? Is there a fine line between? I know you didn't make the double enhancement argument now, but isn't there really a fine line between that? Well, and there we're moving. It becomes an abuse of discretion standard. And the line to me seems to be between, and what the guiding statutes seem to try to deal with, is the distinction between the seriousness of the offense and the offender's misconduct. And particularly where here we have an unintentional act that arguably is at most negligent in what occurred. That's where the line begins to blur. Obviously it's a serious offense. It's that two people died, and there we get with the double enhancement as well. Because of the fact that that's what elevated it to that standard. And seemed to cause the court to feel that probation wasn't permitted here. But clearly probation was given the misconduct to the extent that we're looking at two seconds, perhaps, of inattention. And speeding by a minimal amount, and certainly not an amount that is considered to be 20 miles per hour, is reckless and workers weren't present. It is, I would never say that this wasn't a serious offense. But the misconduct was not serious. And I think that that maybe is where the line needs to be drawn. And balance that against the record that the trial court said was one of the cleanest that he had ever seen. In a 72-year-old man at the time of sentencing. And that's where we believe that the discretion is abused. Thank you. What is the offense? What is the offense? Reckless homicide. Okay. So the death is included in the offense. The death is inherent in the offense. And inherent because there were two deaths in the sentencing enhancement that made it a six-year minimum sentence. Okay. Mr. Arado. Good afternoon. Good afternoon.  Good afternoon, Your Honor. Thomas Arado on behalf of the people of the state of Illinois. The defendant wants this court to believe this was a mere accident, negligence perhaps. That it's not the case based upon the facts as presented. And I would point out the standard of review. That the facts, the evidence must be reviewed in light most favorable to the prosecution. And whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. The defendant was driving an international semi-truck weighing 30,000 pounds plus. In a construction zone that was well signed. And including a lane merger that was well signed. And that there was stopped traffic up ahead. The defendant did not slow down despite his plain training as to being able to recognize signs. Knowing to keep distance between traffic to recognize speed limits. He ignored apparently or disregarded the signage and the stop traffic ahead. And plowed his 30,000 pound vehicle into the back of a Toyota. Which propelled it forward and down. And created grooves in the pavement. It propelled forward and smashed into the back of a freight liner. Carrying 70,000 pounds worth of paper. And crushed the vehicle into about a quarter of the size of its original shape. Killing Jake Hemrick, Michelle Crow and injuring Jamie DuPont. The question is, was this reckless conduct? And the answer is yes it was. And why is that? The standard that must be followed is whether there is a substantial and unjustifiable risk. That a defendant disregards when they act. In this case it was the signage and the stopped traffic that was clear. Mr. Duncan who was driving the freight liner had testified that he was stopped for approximately 30 seconds to a minute. Prior to the vehicle crashing into him from behind with such force that it knocked his glasses off of his face. The event data recorder, the black box, indicated that the Toyota was stopped for approximately 4.95 seconds. Or from about .6 miles an hour to half a second later completely stopped. If Duncan's testimony is taken to be true and it must be in light of the standard. Then he was stopped for a minimum of 30 seconds. Well more than enough time for the defendant to observe the traffic ahead being stopped. It was a freight liner, a truck and the only thing in front of him was a much smaller Toyota vehicle. As far as Mr. Dumas' testimony that she couldn't see past the truck. It was the defendant's truck that she couldn't see past, she couldn't see the Toyota. As far as the defendant's testimony regarding the Toyota swerving and slamming on its brakes. That is clearly refuted by the physical evidence that was taken from the Toyota. And also the testimony of Duncan. So all of these facts show that the defendant's actions were in fact reckless. These cases that are cited by the defendants such as Shark Lava are distinguishable. The testimony was that the speed was minimal or slightly above 37 miles an hour. The court stated that the best that could be said was the state's case was the defendant was inattentive for a few seconds. Failed to realize the left lane was blocked while driving a semi on an icy highway and blowing snow. There was less time, less notice in Shark Lava than in this case. It was 1 o'clock in the afternoon on a clear day, no weather conditions other than clear. So there was nothing to blocking or preventing the defendant from observing the traffic up ahead. Same with Barham. That was again a matter of there was no evidence establishing the defendant was traveling too fast in light of the weather, traffic, or road conditions. Here the traffic was clear, clearly marked as to the road conditions, clearly marked as to and clearly seen ahead that the traffic was stopped. And Jakupak, pardon my pronunciation. The defendant struck a vehicle that was coming out of a Dairy Queen parking lot and T-boned it. There was no stopped vehicle ahead. It was just a matter of excess speed. So those cases are distinguishable from the ones in this case. Now, turning to the sentencing issues, the allegations that the trial judge considered that the inherent offense or inherent factors. When you look at what the trial judge said, it is clear he was considering the defendant's truthfulness. He mentioned the fact that the defendant had disregarded, had testified as to not seeing these signs and not seeing these conditions, and yet still managed to. Where is it? Trial court stated, although defense testified he did not see the signs, the testimony was that there were numerous signs warning of either changing lanes, lowering speed or constructing ahead. Thus, the trial court was taking into consideration not the inherent factors, but the defendant's truthfulness, which is something that the defendant or the trial court is allowed to consider. As far as the trial court found, they would deprecate the seriousness of the offense as far as not giving probation, why it didn't give probation. The specific comments of the trial judge was, their overriding concern was that it deprecated the seriousness of the offense of ignoring warning signs, entering a construction zone, going over the speed limit, driving a heavy, I can't remember if it was 30,000 or 60,000 anyway, a many ton truck, completely disregarded stop traffic, right on the interstate, completely stopped. It wasn't just speed that the trial judge was considering. It was all these factors. Also, the implication that the trial judge considered an improper victim impact statement is refuted by the record. First, the trial judge is presumed to understand and know the law and follow it, unless there's something clearly in the record indicating that they did not. In this case, the trial judge simply said that he felt for the families and the victims. The improper statement that is alleged is from the boyfriend of the victim, Michelle Crow, and he was not either a victim or a family member under the statute. Also, under People v. Richardson, the Illinois Supreme Court has said that the mere fact that the trial court considers an improper victim impact statement does not allow, in and of itself, for a reversal. The trial court is, under People v. Alexander, given great discretion to form sentences, and as long as the trial court considers factors in aggravation and mitigation and it falls within the statutory sentencing range, it must be honored by the reviewing courts. Therefore, there was no abuse of discretion in this case. The trial court said it was considering the factors in aggravation and mitigation. It formed a sentence that was only two years above the minimum and 20 years below the maximum. That was not an abuse of discretion. If there are no other questions, we would stand on the remainder of our brief. Thank you, Mr. O'Rourke. Thank you. Mr. Wegman, any rebuttal? May it please the Court, Counsel? I note that when the State set forth the standard of review, it emphasized, as it did at page 3 of its brief, that the standard of review is whether any rational trial or fact could find, as it did. And where the State placed the emphasis on any, I would, in this very emotional case where people want answers and want to find somebody to blame, I would place the emphasis on the word rational. This was not a decision that was made rationally according to the law. In fact, as a matter of law, according to subsection E-8, recklessness is shown by excessive speed only if that speed is at 20 miles per hour over the speed limit in a construction zone where workers are present. And those factors were not present here and wasn't demonstrated by the State, and thus no rational trial or fact could find that under these circumstances the defendant's behavior demonstrated a conscious disregard for the welfare of others. I would note that at a minimum, the defendant, who the State said was following too closely, was 435 feet behind according to the officer's testimony. And according to Duncan's testimony, he was arguably a mile behind Duncan's truck if he was there for a full minute at 60 miles per hour. The defendant would take that long to get up there. This was not something where the traffic was obviously slowing down and getting in the way. And unfortunately, we can't really reconstruct the scene at this point, but that's not our burden as defendants. That's the burden of the State, and they did not meet that here. The State points to the supposed lies that, in its brief, it equates to what was found in Moffitt and in Meeks, where it was clear that the defendants were perjuring themselves at trial. And here the judge indicated, yes, the defendant is saying that he is not at fault here. And the judge went on to say, and I believe it was particularly in the motion to reconsider sentence, that the defendant's right, absolute right, is to maintain his innocence and to believe, as he did, that this was an accident. And the judge went on to say he wasn't holding that against him and that he believed that the defendant was unlikely to commit another offense. This is a man who, at the age of 72 at the time of sentencing, had been married for some 40 years, had been a member of his church and an active member for 50 years, who raised four daughters to go on to college degrees after he himself had made it to, I believe, the third grade. This was not somebody who demonstrated that he was, in fact, the court admitted he was not a threat to society. There was no need for rehabilitation here, and deterrence can't be considered as a factor justifying any sort of imprisonment because it has long been recognized that you can't deter an accident. And that is simply something that can't happen here. Incapacitation is not a goal. The only goal required of Illinois sentencing is rehabilitation, and that seems to have been utterly ignored by the court here. That felt that it would be unreasonable to say that you can go into a construction zone, driving a truck, weighing 30,000 pounds, and again, there's no separation or indication that there's a special standard for the driver of the semi-truck. And I would note that at 30,000 pounds, his load was actually about half of what a semi-truck would normally be because it was an empty load in this case, and that's why the trailer was as it was and did not have a container. The state also says that the judge is presumed to know the law, and therefore he didn't give any credence to what the one witness said at sentencing, a witness who did not have a relationship that is given special protection by the statute and by the Bill of Rights for crime victims. Instead, if the trial court recognized that this person was not a victim of the case, as the state maintains, then the trial court violated its duty to not allow that witness to testify. That witness had no position to testify in the court. He's not protected, as were the witnesses in Richardson. And there have been open questions, most notably in the second district somewhat recently, indicating that where the statement is given by somebody who is not considered a victim under the act, then those special protections do not exist. If there are no further questions, I see that I'm out of time. I would just briefly ask that this court reverse the findings in the trial court. Thank you, Mr. Wagner. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.